Good morning. Glenn Garber for Arias Hopkins, the appellant in this case. This was an extremely triable case for the defense, and it was unfairly torpedoed by a number of serious The key witness in the case was Alexander Melendez, also known as Kiki, who was an incentivized cooperator, and challenges to him I think were key to what the case was about. And I would ask the court to consider the errors that I raised in my brief in the context of what is not an overwhelming case for the government by any stretch of the imagination. The first point I raised in my brief is the use of the dismissed 2012 gun possession case. And this I think is a head-scratching issue in a lot of ways. The case was dismissed in the grand jury after my client testified in the grand jury, and the government made it a very key feature of its prosecution. Not only did he use it on this direct case to show that there was a relationship between Melendez and Hopkins that was a trustworthy, confidant-type relationship that would then lend a jury to presumably believe that they would commit this murder together. Right, but isn't part of your argument for why this wasn't necessary is that there was already evidence in the record of their relationship. And so this additional evidence, how did that additional evidence about that create prejudice? Yes. So how did additional evidence create prejudice? Right, well you said that this evidence, they used this evidence to show a relationship between them, but I think part of your reason for why this was unnecessary to be introduced in the first place is that their prior relationship was not actually in dispute. There was evidence of that. And so if that is the case, how did this cause additional harm? Well, because of the nature of the evidence. So there was no dispute that they had grown up together, that they had committed crimes together, but to allow a gun possession charge, and what it was was him and Melendez allegedly went to an adjacent neighborhood and tried to shoot rival gang members and the gun jammed. Now that type of evidence, that uncharged crime or that dismissed crime, is very similar to this particular case, and it wasn't necessary to establish their relationship because it was conceded by the defense and it was proved through a variety of other ways. But a gun possession charge going to shoot a rival drug or rival gang member, and this was a shooting of a rival drug gang member, is too close, too similar, and it's highly prejudicial. But there's layers to this point. One of the layers is that to use dismissed conduct when, look, there's no real law on this. This is a case, in my opinion, or what I can tell is a first impression. I've never, I've not seen a case where dismissed conduct in a grand jury is used in this fashion on their direct case under 404B, and that's what was done here. And when you look at the cases on acquitted conduct, it is allowed, but that's because it wasn't proven beyond a reasonable doubt. Here under essentially the lowest standard of proof, the grand jury could not reasonably conclude that he participated or committed that crime. That is a very different standard and is distinguishable in a very positive way for the defense from U.S. v. Dowling, which is the key case on acquitted conduct. But I filter it through the 4041, 4043 analysis, which is where the prejudice comes in under 403. There's also a third layer to this, which is the use of it on my client's testimony. And what the government does is launches into him, and it starts out, the cross of Mr. Hopkins, they start out attacking him for lying in the grand jury. You've lied before under oath. You lied in the grand jury. And that use was not noticed. It was not, and under 404B, I believe it's three, they have to give reasonable notice of the purpose for which they're going to use that inherently prejudicial other crime evidence. They didn't do that, and they attacked him on cross-examination. That's the new version of the rule. And my understanding is that at the time of trial, it was the prior version, which only requires reasonable notice of the general nature. Isn't that a different standard? My understanding is they have to identify the purpose. And if I'm quoting the wrong rule, then I'm off on that. But I thought they have to provide notice of the purpose. They did provide notice of the purpose, which was association. And that is how they defined it in their 404B notice in this case. So putting aside the step. How were you sandbagged then? How was I sandbagged? Yeah. Isn't that the allegation? Well, he's cross-examined about it. I may have prepared him differently on my prep for him. I may not have put him on the witness stand for them not to let me know that they're going to cross-examine him and call him a liar. Not only did you do the crime that the grand jury dismissed, but you're a liar about it when you say you didn't do it. And that became a key feature of their examination. So that is, I think, extremely prejudicial without giving me advance notice. And it shouldn't have come in even on their direct case because of the inherent prejudice of it, the fact that it was not found by a grand jury to even be reasonably—they couldn't reasonably conclude that it even existed. And then to make it a cornerstone of their case on direct and on cross, I submit is highly prejudicial to my client. But assuming you're correct on this, that this should not have been admitted, what's your argument as to why this wasn't harmless in the view of the rest of the government's case? So this was a very strong case for the defense. The government raises a number of things in their brief that I don't think are—I think they're very underwhelming. So what we have is we have Kiki Melendez, the only person on the scene who claims that Hopkins was there. There's nobody else. There's two civilian witnesses, Jenna Perry and Keisha Wallace, who tell the police the same day of the crime that the two people who are fleeing the scene are short in stature. Jenna Perry says that they were wearing dark clothing, wasn't wearing a green coat, and Melendez puts my client there wearing a green coat. My client is six foot three. Kiki or Alexander Melendez is five foot seven. There is no—I think it's unrealistic that they would be confusing my client for a short person. So I had that. They also are claiming that my client did the crime to a—an expert, an Instagram post that showed that he had already been a mackballer before the murder had taken place. My time is running a little bit low, so could I just ask you to address the interested witness instruction? Yes. In particular, my question is how does it undermine the presumption of innocence to say that a witness's interest can create a motive to lie? That just seems like a true statement of fact in human nature. Are you saying can versus creates? Yeah. Right. There is a can there. Okay. So the language in Solano is can—the language is can create or creates a motive to falsify and that—and basically that you may consider. The next sentence is may sway a witness to testify, which is the same language in our case. So what—so what they're—I don't see a real material distinction between the can and the create. It's a permissive instruction saying, look, you can consider whether somebody is an interested witness and you could take into account their motive to lie because of their interest in the outcome. The problem is not distinguishing Hopkins from other witnesses. A criminal defendant is in a different category. And so the problem, I think, in Solano is the same problem here. He's lumped into the same category as the other witnesses, and when there's a presumption of innocence, they have to distinguish and say this charge does not apply to the defendant because it doesn't apply to the defendant. It's essentially inviting the jury to disregard the presumption of innocence. That is the thrust of what Solano says and also the cases that Solano was founded on. And that problem still exists—can versus create. It's permissive. The language is permissive, but to not distinguish the defendant from other witnesses is problematic. And I think if you put that—tie that into the problem with the cross-examination on the grant—on the dismissed conduct, because I also raise a collective argument here that all the issues together collectively are problematic, I think that that jury charge issue has heightened significance. And it's plain error. It boils down to, I think, the significance of the harm. This is not a harmless error case, in my opinion. The two cases that I think are important for the case are the two cases where the harmless error existed and they found it to be not plain error. And in those cases, Munez, there was video footage putting the defendant there as the shooter. And then Brutus, the defendant, confessed and then testified, and testimony was deemed to be incredible—the most incredible perjury according to the district court. The circuit court said the testimony virtually made no sense. He had a confession in one, video in the other. Here, you have Melendez, an incentivized witness, placing my client on the scene, lied multiple times during his cooperation, and my client testified and provided a viable defense and said that he left the scene before the murder had taken place, and civilian witnesses who were disinterested saying it wasn't him, and their motive in regard to him being a mackball or a drug dealer, nonexistent. And there's other things also that made this case extremely triable, in my opinion. I know I'm out of time, but one key thing that I want the court to be mindful of, and I'm sure you are, Kaplan gave me a very hard time. And during the trial, he interfered with two key witnesses, which was Jenna Perry, the civilian witness who he flew in from Ohio, and he's cross-examining her in critical moments of the examination and undermining her ability to be able to see, which was, in my opinion, and I would hope when you read the record, and I'm sure you did, you'll see it was grossly unfair. Thank you, Mr. Governor. Also, my expert, too, in the clustering of bullets. You've reserved two minutes for rebuttal. Thank you. We'll hear from the government. Good morning. May it please the court. My name is Margaret Graham. I represent the government here on appeal, and I also represented the government at trial. Your honors, the judgment of conviction should be affirmed. Arias Hopkins was convicted by a jury of his peers of the murder of 20-year-old Shaquille Malcolm on the basis of strong evidence. At trial, three separate witnesses directly implicated Mr. Hopkins in the murder, including Alexander Melendez, his childhood best friend who committed the murder standing right alongside him. These witnesses were corroborated by prison calls where Hopkins discussed the murder in code, a civilian witness, ballistics evidence, as well as- Ms. Graham, can I just ask you, with regard to the admission of the 2012 arrest, it seems that the argument for its probativeness or its relevance is fairly slim. I mean, if the idea is it's being introduced to show a relationship, and as you note, there was already evidence of their long-time friendship, and as well as the prior, I guess, crimes that they'd committed together, the idea that this arrest for which the jury ultimately did not indict him, how is this probative? And I guess part two of my question would be to rely on that, his testimony in the grand jury, to assert that he's a liar at trial when, in fact, the acquittal or the dismissal suggests that the jury did not think he was lying, and to use it in that way, does that- that strikes me as problematic. Yes, Your Honor, so in terms of what was in the record, Mr. Garber says there was already plenty in the record about their relationship and that he conceded their friendship. Well, fair enough, but there's a friendship, and then there's a friend who, when you decide that you want to go and shoot at a rival crew, and you ask them if they will come help you, says, okay, brings a gun, comes along, and helps you commit or attempt to commit that shooting. There was, in fact, no shooting, which is an important point on the 403 analysis, and so it was evidence of the nature of this rather unique relationship that they had, the same relationship that in the I need someone to kill Mr. Malcolm and ask Mr. Melendez to do it. Mr. Melendez then turned Mr. Hopkins, and again, Mr. Hopkins- But doesn't this- I'm sorry, did I jump in? No, no, no, not at all. It sounds like propensity. I mean, the idea is that this has to be a balance between why it's probative in this case and balancing its prejudicial effect here. I guess I'm still struggling with how it fits that balance, because the way you're describing it, like, as I said, I'm hearing propensity, like, oh, he has this prior relationship with this person, and in the past, he got together with this individual, and they decided to try to go shoot someone, and now, in this case, it's the same individual, and they're going to shoot someone. That sounds like propensity to me. Certainly, and that's always a risk when you have similar facts. It clearly was not used that way. It was used as direct evidence here to show the development of their relationship and that unique relationship of trust. But you started off by telling us, you know, you had all this other evidence of the relationship, and it was strong, and you had the telephone calls from jail and so forth and so on. So, I have a hard time believing that this is really why you introduced that evidence. I think what you wanted to do was be alive before. Isn't that how you got, you know, the grand jury to vote no to a bill? Your Honor, there was no notice that Mr. Hopkins would testify that there didn't need to be, but we had no idea that Mr. Hopkins was going to testify. So, it just goes to your question was whether we really introduced it in anticipation of Mr. Hopkins testifying. We had no idea that that would be occurring, and it really was introduced as direct evidence. I don't understand if you really believe your case was this strong, why you put in this, you know, dubious bit of evidence. Your Honor, we thought that it was admissible, and the district court agreed, and we submit it was not an abuse of discretion, but we did believe that it was admissible as the existence of the relationship. Well, it's the particular nature of the relationship, certainly. You said you put it in to prove the existence of the relationship. My question was, who denied that? I mean, it seems to me, from looking at the record, that it was clear these guys, you know, knew each other and hung out together. Yes, Your Honor, certainly the fact that they were friends was there. We thought that this was important to understand their history together and the specific nature of their relationship, and of course, that was contested, and you know, the fact that large parts of that were contested, although as you know, the fact that they had been friends was not. I'm sorry, what was contested? You said large parts of that were contested. The relationship wasn't contested. What was contested was that they shot this person together. Is that what you're suggesting, or? Yes, what was contested was that they committed this crime together, and we submit that the nature of their relationship is important to understanding that, and important to understanding why Mr. Melendez's testimony on that point was credible. You said the nature of the relationship. What do you mean? The point that there are many people have many friends, including friends that they spent a special relationship of trust and of confidence that was built over the course of many years. How did the grand jury testimony establish that? It was an incident in time several years before. I'm not sure I follow you on that. Yes, so as to asking about the grand jury testimony, that was only brought up on cross-examination, and what Mr. Hopkins was asked about was he was asked whether he had lied to the grand jury. The question was really, have you lied under oath before? Because the government was arguing that he was lying under oath in his direct examination. The argument was, have you lied under oath before? He denied it. The government did not at that point seek to admit any extrinsic evidence, or create a mini trial, or do anything that would have caused undue prejudice. It was proper to ask him about that under Rule 608B. He denied it, and the government moved on in its line of cross-examination. Further, as to the prejudice point, there was a limiting instruction given about the evidence of this incident, and further, as Judge Lee noted, there is limited prejudice created by the... I have a tough time with your answers to this question. It wasn't the real reason you went into that area, because you wanted the jury to know that several years before, these two guys had planned a murder together, or planned shooting together. That was not your honor. It was to establish their relationship. Pardon me? That was not your honor. It was to establish the nature of their relationship. You showed that they had breakfast at Chick-fil-A. You showed that years ago, you showed that they were involved, allegedly involved in a shooting together. That's why you put it in, right? In an attempted shooting, which certainly was not under Rule 403, as substantially more prejudicial than it was probative. It was an attempted shooting where the gun was not even fired, as compared to the facts here. Further, given the limiting instruction and the limited use that the government made of it, we submit that any error was harmless. Referring to this, my mind has questions about your judgment. I'm sorry, your honor? Raises in my mind questions about your judgment. Your honor, we believe that it was admissible, and as noted, any error was harmless. I see that my time is about to expire. I'm happy to answer any other questions, but if there are none, I would urge the court to affirm the conviction. Thank you. Thank you, Mr. Garber. Mr. Garber, you have two minutes. Thank you. So, on the gun possession charge, the, let me take off my mask, there were robberies that they had committed together. There were violent crimes that were not contested. There was evidence that was put in that they had, my client had accompanied him during drug sales. So, there was evidence in the record that clearly established a relationship along the lines of what the government, I think, was claiming they were putting the evidence in for, and I believe that that is very important. Also, my client did not raise the gun possession charge on his direct testimony, so he didn't open the door. I say that in my brief, but I think that's important. And Federal Rule 11-608B, there is an opening where the prosecution can question somebody on prior bad acts that go to dishonesty. This is not, this is not that type of a crime, and for them to say, because he lied in the grand jury, that is circular reasoning. That is their, they're saying, well, we believe he lied in the grand jury, therefore, we can twist this into a crime of deceit, and we can cross-examine you about it. That is not fair, and that is not right. If there's anything else you want me to address now, because there are a number of other issues we didn't get to, I'm happy to do that. If not, thank you very much. Thank you both. We'll take the case under advisement.